IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **JEFFREY MOATS,** § | | Civil Action No. _____ |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| v. § | | |
| § | | **COMPLAINT FOR** |
| **NATIONAL CREDIT UNION** § | | **DECLARATORY AND** |
| **ADMINISTRATION BOARD,** § | | **INJUNCTIVE RELIEF** |
| A federal administrative agency; § | | |
| **TODD M. HARPER,** § | | |
| **KYLE S. HAUPTMAN, AND** § | | |
| **RODNEY E. HOOD,** § | | |
| In their official capacity § | | |
| as Members of the National § | | |
| Credit Union Administration Board; § | | |
| And **JENNIFER WHANG,** In her § | | |
| official capacity as an Administrative § | | |
| Law Judge and Inferior Officer of the § | | |
| United States § | | |
| § | | |
| **Defendants.** § | | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

1. Jeffrey Moats has been seeking his day in court against his former employer, the Edinburg Teachers Credit Union, and its conservator, the National Credit Union Administration Board (NCUA)—an agency of the Executive Branch of the United States—for two years.

2. Indeed, litigation between Mr. Moats in these parties began in earnest when, shortly after being terminated from his long-time employer the Edinburg Teachers Credit Union, Mr. Moats sued the Credit Union seeking post-termination benefits. He then sued the NCUA, seeking return of personal property. Ultimately, the NCUA returned thousands of dollars' worth of property to Mr. Moats. And the Credit Union released over a million dollars in retirement benefits held in an account for his benefit. Most recently, last month, Mr. Moats sued the Credit Union

again seeking a jury trial of his breach of contract claims against his former employer in Texas state court.

3. Unwilling to allow Mr. Moats's rights to be determined by a jury of his peers, the NCUA responded by subsequently and separately filing its own "administrative" claims against Mr. Moats, seeking historically judicial remedies of money damages and penalties among others.

4. But the NCUA seeks relief not from the constitutionally mandated jury of Mr. Moats's peers, but from a single Administrative Law Judge. A person appointed by the agency pursuing the claims against him, and untouchable not only by the NCUA Board that presumably appointed her, but by the very executive whose power she intends to wield against Mr. Moats.

5. Mr. Moats seeks a declaration that the NCUA's structure is constitutionally infirm, that its executive branch, self-administered "court" is unconstitutional in accordance with controlling precedent, and an injunction prohibiting the NCUA from forcing him to continue participating in the deprivation of his own constitutional right to trial by jury.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Article III of the United States Constitution and 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). Venue is proper in the Southern District of Texas because the defendants are (1) officers or employees of an agency of the United States acting in an official capacity and (2) an agency of the United States, and this is the district in which the plaintiff resides and in which the events giving rise to this action occurred. *See* 28 U.S.C. § 1391(e)(B) and (C).

7. In addition, under the Supreme Court's opinion in *Axon Enter., Inc. v. Fed. Trade Comm'n*, 143 S. Ct. 890, 903 (2023), this Court has jurisdiction to immediately review the structural constitutional challenges to NCUA asserted herein because this Court's intervention is

necessary to spare Mr. Moats the immediate injury of being "subject[ed] to an illegitimate proceeding, led by an illegitimate decision maker."[1] In particular, allowing the current administrative proceeding to find facts related to Mr. Moats's actions without a constitutionally required jury would subject him to unconstitutional agency authority exercised through an unconstitutional show trial.

## PARTIES

8. Plaintiff Jeffrey Moats resides within the Southern District of Texas.

9. Defendant National Credit Union Administration Board is an agency of the United States government with its headquarters in Alexandria Virginia.

10. Todd M. Harper, Kyle S. Hauptman, and Rodney E. Hood are the members of the Board of the National Credit Union Administration, and Defendants in their official capacities.

11. Jennifer Whang is an Administrative Law Judge with the Office of Financial Institution Adjudication and a Defendant in her official capacity.

## INTRODUCTION

12. Congress created the NCUA as an agency in the executive branch, imbuing it with massive executive power. The President appoints the three members of its governing board to fixed six-year terms with the advice and consent of the Senate, but cannot remove them because their terms are fixed. The NCUA thus exercises massive executive power beyond the control of the President—in whom the executive powers are vested—and by extension the people of the United States—by whom the President is elected. That structure is patently unconstitutional.

---

[1] In addition to not implicitly divesting this Court of jurisdiction under *Axon Enter., Inc. v. Fed. Trade Comm'n*, 143 S. Ct. 890, 903 (2023), Congress also has not explicitly divested this Court of its jurisdiction to address Mr. Moats's structural constitutional claims. *Cf. Burgess v. Fed. Deposit Ins. Corp.*, No. 7:22-CV-00100-O, 2022 WL 17173893, at *6 (N.D. Tex. Nov. 6, 2022) (finding federal court jurisdiction to review claims regarding the constitutionality of similarly-structured FDIC).

3

13. So too is an Administrative Law Judge, like ALJ Whang presiding over and adjudicating the NCUA's charges against Mr. Moats. Like the Board that appointed her, ALJ Whang also cannot be removed other than for cause. And, just like NCUA's Board, she wields the President's executive power beyond the President's effective control. Indeed, because she cannot be removed—even for cause—without the unanimous consent of each agency for which she acts as an ALJ, she is unconstitutionally insulated not only from the President and the people, but from NCUA Board that appointed her.

14. These structures, and the procedures the NCUA has promulgated and is using to prosecute Mr. Moats, deprive him of fundamental constitutional rights, including his right to appear before a constitutionally structured agency, his right to appear before a constitutionally appointed ALJ, and his right to be judged by a jury of his peers. This suit for declaratory and injunctive relief seeks to safeguard those rights.

## FACTS

> ***Mr. Moats's employment with the Credit Union and ensuing litigation.***

15. Jeffrey Moats led the Edinburg Teachers Credit Union ("ETCU" or the "Credit Union"), a small credit union in south Texas, as its CEO for over 25 years. Under his leadership the Credit Union was always at or near the top of performance metrics among credit unions of all sizes statewide. It more than passed every semi-annual state audit. The Credit Union's Board of Directors, and more importantly its members, praised Mr. Moats's management skills and the Credit Union's resulting stellar performance. In March 2020 its financial condition was as it had historically been—excellent.

16. Notwithstanding the Credit Union's excellent financial condition, on March 26, 2021, the Texas Credit Union Department issued an order placing the Credit Union in

conservatorship. The Department immediately appointed the NCUA Board as the Credit Union's conservator. Mr. Moats was immediately terminated as CEO, and thrown out of the building with little more than the clothes he was wearing. The NCUA seized every piece of property in the building, including significant personal property and documents that were openly and obviously purely personal to Mr. Moats.

17. Unsurprisingly, Mr. Moats sued the Credit Union for post-termination benefits. He was also forced to sue for the return of his obviously personal property at the Credit Union that was being withheld from him.

18. After initially accusing Mr. Moats of "co-mingling" personal and Credit Union assets, the NCUA's investigation found absolutely no evidence supporting this allegation. Instead, the Credit Union returned over a million dollars in retirement benefits and the NCUA returned thousands of dollars in personal property to Mr. Moats—all of which had been unlawfully withheld.

19. In addition, without resolving Mr. Moats's claimed entitlement to over a million dollars in unpaid post-termination benefits, the NCUA and the Texas Credit Union Department ended the Credit Union's conservatorship earlier this year, returning its management to its members and reinstalling a member-led board of directors.

20. Nonetheless, because Mr. Moats and the Credit Union still disagreed about his entitlement to those post-termination benefits, Mr. Moats sued the Credit Union in Texas state court in March of this year to obtain them.

21. On April 20, 2023—the day before the Credit Union answered Mr. Moats's lawsuit (and countersued him seeking essentially the same relief the NCUA now seeks administratively)—the NCUA served a "Notice of Charges" under 12 U.S.C. § 1786. The claims asserted in the Notice

of Charges include that Mr. Moats breached fiduciary duties to the Credit Union, unjustly enriching himself. The NCUA sought relief based upon allegations dating back more than ten years and based upon transactions that its own examiners had presumably reviewed multiple times.

22. But the claims are not the only similarities between the administrative notice of charges and traditional judicial actions, like the ongoing lawsuit between Mr. Moats and the Credit Union. The Notice can be amended or supplemented at any time, summary judgment can be sought and granted, including as to damages, the Notice also states that the charges will be heard by an ALJ, and that an evidentiary hearing will be held. The Notice commands Mr. Moats to file an answer, dictates its form, the consequences of not answering in the form demanded, its timing, and on whom he must serve it, and declares any failure to do so, not only a waiver of his right to contest the charges. but consent to an order finding the facts alleged and granting the relief requested.

23. The similarities with traditional litigation continue with respect to the NCUA's requested remedies, including its demand of $4,000,000 in restitution, at least $1,000,000 in "civil penalties," and an order—in function a permanent injunction—prohibiting Mr. Moats from serving as a director, officer, or otherwise participating in the conduct of the affairs of any insured depository institution.

24. On April 26, 2023, ALJ Whang issued "Order No. 1: Notice of Designation and Preliminary Order" ("Order No. 1"). It includes terms (1) designating ALJ Whang as the ALJ assigned to preside over the proceeding the NCUA initiated, (2) requiring Mr. Moats to (a) electronically file an answer in a specific form, and (b) electronically file a request for a hearing, both within a specific time, (3) detailing the form, format, contents, required redactions, length, methods of filing, and service requirements for filed documents, motions, and other pleadings, (4) establishing the commencement of discovery, and (5) requiring that the parties meet and confer

before filing discovery motions.

25. As discussed below, the NCUA's structure, the position of the ALJ designated to act as judge and jury for its claims, and the procedures the NCUA will employ while doing so all violate the Constitution. The NCUA's Notice of Charges thus requires not just Mr. Moats's submission to—but his active participation in—depriving himself of his own constitutional rights by unconstitutional actors in an unconstitutional adjudication. As discussed below, this inflicts immediate injury on Mr. Moats, entitling him to both declaratory and injunctive relief.

> ***The NCUA's unconstitutional structure.***

26. The Constitution provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. CONST., art. II, §1, cl. 1. It also requires that, "[the President] . . . by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States . . . ; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.*, art. II, § 2, cl. 2.

27. The NCUA is an independent agency that Congress "established *in the executive branch* of the Government . . . under the management of a [NCUA] Board." 12 U.S.C. § 1752a(a) (emphasis added). The three board members "are appointed by the President, with the advice and consent of the Senate" to fixed six-year terms. *Id.*, § 1752a(b)(1). Their terms may be extended to avoid vacancies until a successor is appointed, but there is no statute allowing their removal. *See id.* § 1752a(c). They are thus tenure-protected and may only be removed by the President for cause. *See Weiner v. United States*, 357 U.S. 349, 352, 356 (1958) (equating fixed-length terms with for-cause removal protection); *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S.

477, 487 (2010) (same).

28.     The result is three unelected, effectively unremovable Board members exercising massive executive power. For example, the Board had declared that not only can it investigate whether "any party is unfit to participate in the affairs of a credit union," it can also investigate "***such other matters*** as the [NCUA's] General Counsel or his or her designee, ***in his or her discretion***, ***shall deem appropriate.***" *See* 12 C.F.R. § 747.703(a) (emphasis added); *see also* 12 U.S.C. §§ 1784(b), 1786(p).

29.     The scope of the executive power the NCUA has usurped by granting itself effectively unbridled discretion is breathtaking. In interpreting and administering over 20 federal statutes, *see* 12 U.S.C. ch. 14, the NCUA has likened itself to "a Grand Jury, which can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not."[2]

30.     To allow itself to fully exercise the executive power it has claimed for itself to investigate anything it finds suspicious, the NCUA has also given itself the powers, among others, of issuing subpoenas and conducting depositions. *See* 12 U.S.C. § 1786(p); 12 C.F.R. § 747.803-.804.

31.     Investigating whoever and whatever it wants is only the tip of the NCUA's executive powers iceberg. It unilaterally issues notices of charges, *see* 12 U.S.C. § 1786(e), (g), and (k), and prosecutes the claims it alleges against the accused. Exercising these executive powers leads to the NCUA assessing monetary penalties, *see id.* § 1786(k), and issuing orders barring individuals from serving in federally insured financial institutions, *see id.* § 1786(g).

---

[2] *See Moats v. Edinburg Teachers Credit Union*, et al, No 1:21-cv-496-JRN (W.D. Tex.), at dkt. 30, NCUA's Opposed Motion for Protective Order and to Stay Discovery, at p. 5 (claiming that law enforcement privilege applied to NCUA administrative investigations and quoting *Resolution Tr. Corp. v. Walde*, 18 F.3d 943, 947 (D.C. Cir. 1994) and *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950)).

32. While wielding extraordinary executive power, the NCUA's board is insulated from the executive—the President—whose power it is wielding. This structure violates at least the Take Care Clause of the Constitution, as well as separation of powers principles established under the Supreme Court's opinion in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020).

> ***The NCUA's unconstitutionally insulated ALJ.***

33. The NCUA complimented its inherently unconstitutional structural defects by assigning its Notice of Charges against Mr. Moats to an unconstitutionally insulated administrative law judge with the Office of Financial Institution Adjudication ("OFIA"), ALJ Jennifer Whang.

34. Like the NCUA's board, ALJ Whang can only be removed for cause, in her case after a hearing before the Merit System Protection Board. *See* 5 U.S.C. § 7521.

35. And even cause alone is not enough. Instead, under the Interagency Administrative Law Judge Agreement governing OFIA ALJs, "[a]ny change to the [OFIA staff, including ALJs,] shall be subject to the approval of all . . . [the FDIC, Office of the Comptroller of Currency, the Board of Governors of the Federal Reserve, and the NCUA]." *See* Exh. 1, Interagency ALJ Agreement.

36. Under controlling Fifth Circuit precedent, ALJ Whang's insulation from removal by the President—or any other principal officer of the United States—violates the Take Care Clause of the United States Constitution. *See* U.S. CONST. art. II § 3; *see also Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 463 (5th Cir. 2022).

## CAUSES OF ACTION

**Count 1** **(Declaratory Relief) The NCUA is unconstitutionally structured in violation of the Take Care Clause as interpreted by the Supreme Court in *Seila Law*.**

37. Each preceding paragraph of this Complaint is incorporated by reference as if restated fully in connection with this Count.

38. In *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2201 (2020), the Supreme Court clarified the Constitution's requirement that "[t]he executive Power shall be vested in a President" and that the president "take Care that the Laws be faithfully executed." U.S. CONST. Art. II §1, cl. 1; *id.* § 3. In particular, *Seila Law* held that creating agencies governed by multimember panels not subject to executive removal is constitutional only for "multimember expert agencies *that do not wield substantial executive power*." *See Seila Law*, 140 S. Ct. 2183 at 2199–200 (emphasis added).

39. The NCUA is not such an agency. It wields—and vigorously exercises—enormous executive powers, including—at its sole discretion—investigating, charging, and unilaterally punishing any conduct it chooses relating to credit unions, and the citizens affiliated with them.

40. The executive authority wielded by the NCUA closely resembles the executive powers the Consumer Financial Protection Bureau ("CFPB") was found to be unconstitutionally wielding in *Seila Law*. Like the CFPB, the NCUA "possesses[es] the authority to promulgate binding rules fleshing out [numerous] federal statutes," *see id.* at 2200, "instead of submitting recommended dispositions to an Article III court, . . . [the NCUA] may unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications," *see id.*, and the NCUA can seek daunting monetary penalties, and can sue and be sued on behalf of the United States—a quintessentially executive function, *see id.*; *see also* 12 U.S.C. § 1789(a)(2).

41. Because the NCUA wields substantial executive power while effectively insulated from control of the executive whose power it is wielding, Mr. Moats seeks a declaration that the NCUA is unconstitutionally structured. Because the NCUA is unconstitutionally structured, Mr. Moats seeks a declaration that all executive actions the NCUA has taken or is taking against Mr. Moats, including issuing the Charge, are void and of no effect, and that Mr. Moats is under no obligation to respond to or comply with all or any part of the Charge.

**Count 2**     **(Declaratory Relief) ALJ Whang is unconstitutionally shielded from removal in violation of the Take Care Clause of the United States Constitution.**

42. Each preceding paragraph of this Complaint is incorporated by reference as if restated fully in connection with this Count.

43. *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) held SEC ALJs were officers of the United States for purposes of the Appointments Clause of the Constitution. S*ee Lucia*, 138 S. Ct. at 2050-54.

44. ALJ Whang exercises executive powers to a degree and in such a manner that she is acting as an inferior officer of the United States in presiding over NCUA's charges against Mr. Moats.

45. As an officer of the United States ALJ Whang is subject to the Constitution's mandate that the President "shall take Care that the Laws be faithfully executed . . . ." U.S. CONST. art. II, § 3. This clause "guarantees the President a certain degree of control over executive officers; the President must have adequate power over officers' appointment and removal." *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 463 (5th Cir. 2022), *citing Myers v. United States*, 272 U.S. 52, 117 (1926).

46. The President cannot be "restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer."[3] *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 484 (2010). "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy*, 34 F.4th at 464.

47. ALJ Whang's appointment is unconstitutional under this standard alone. Her removal requires, first, a hearing before the Merit System Protection Board, and then—as discussed above—unanimous agreement among the principals of multiple financial agencies. *See* 5 U.S.C. § 7521. As a result, the President lacks the control necessary to ensure that she is faithfully executing the laws on his behalf.

48. ALJ Whang is even further removed from the President's control. As already noted, the NCUA Board's tenure protection prevents their removal by the president other than for cause. *See Weiner*, 357 U.S. at 352, 356 (equating fixed-length terms with for-cause removal protection); *Free Enterprise Fund*, 561 U.S. at 487 (2010) (same). Under controlling Fifth Circuit precedent, ALJ Whang's multi-layered insulation from the President's power to ensure she is faithfully executing the laws is unconstitutional under the Take Care Clause of the Constitution. *See Jarkesy*, 34 F.4th at 464-65 (holding SEC ALJs only removable for good cause established before the Merit Systems Protection Board ("MSPB") by commissioners who in turn could only be removed by the President for good cause "sufficiently insulated [them] from removal that the President cannot take care that the laws are faithfully executed. The statutory removal restrictions are unconstitutional.").

---

[3] In *Lucia* the Court expressly "elide[d] a distinction, not at issue [there], between 'principal' and 'inferior' officers." *Lucia*, 138 S. Ct. at 2051 n.3. That distinction is without difference here as well. Mr. Moats's complaints that officers of the United States are unconstitutional insulated of from the executive whose power they are wielding do not turn on whether they were constitutionally appointed.

49. For the same reasons, statutorily conditioning ALJ Whang's removal upon both a finding of good cause established before the MSPB and unanimity among all parties to its inter-agency agreement regarding ALJs unconstitutionally prevents the President from taking care that laws are faithfully executed.

50. ALJ Whang's multiple layers of insulation from Presidential removal violates the Take Care Clause of the Constitution.

51. ALJ Whang is well-aware of these holdings, as well as the Fifth Circuit's holding that resolution of claims like those brought in this case require a jury—as discussed below. Nonetheless, as discussed below, ALJ Whang has refused to provide juries for litigants before her, and—indeed—has acknowledged that she lacks any ability to do so.

52. ALJ Whang's near complete insulation from political accountability is harming Mr. Moats. Despite the clear constitutional requirement that a jury find facts related to the NCUA's charges, ALJ Whang has already ordered Mr. Moats to appear before her, threatening to impose monetary penalties unless Mr. Moats requested a hearing from her. Obviously that the hearing ALJ Whang required that Mr. Moats demand would—without question—deny Mr. Moats his fundamental constitutional right to a trial by jury (because ALJ Whang lacks the authority to provide a jury trial).

53. A federal judge who openly disregarded controlling precedent in this manner would face the threat of impeachment. In a properly functioning system where the President effectively controlled officers of the United States, Mr. Moats could resort to the political branches to remedy an ALJ's complete disregard for the controlling rulings of the judiciary.

54. Here, Congress has instead effectively completely insulated ALJ Whang from the President, the political process, and the people, empowering her to unilaterally and summarily

13

disregard judicial rulings without fear of consequence.

55. This insulation from removal is imposing a here-and-now injury on Mr. Moats, requiring him to submit to the authority of an officer wielding executive power while shielded from any political accountability, who has chosen in the past to disregard the constitutional protections that Mr. Moats would otherwise enjoy, and is disregarding them in this very case.[4]

56. For these reasons, Mr. Moats requests a declaration that the restrictions on ALJ Whang's insulation from removal create a constitutional injury for Mr. Moats and that ALJ Whang lacks the authority both to convene a hearing on the charges asserted by the NCUA, and to order Mr. Moats to participate in any such hearing in any way.

> **Count 3** **(Declaratory Relief) The Procedure Required by the NCUA and the Unconstitutionally insulted ALJ Whang will deprive Mr. Moats of a Jury Trial.**

57. Each preceding paragraph of this Complaint is incorporated by reference as if restated fully in connection with this Count.

58. The Seventh Amendment to the United States Constitution requires that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The NCUA seeks restitution and fines from Mr. Moats exceeding $5 million for well-established common law causes of action like breach of fiduciary duty and fraud.

59. Indeed, Mr. Moats is currently being sued by the Credit Union in Texas state court based upon the exact same conduct for which the NCUA seeks restitution and penalties.

60. Instead of a jury, the NCUA offers a proceeding before a bureaucrat employed by the same Executive Branch who investigated and is charging him. This would completely deprive

---

[4] *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020) ("In the specific context of the President's removal power, we have found it sufficient that the challenger 'sustain[s] injury' from an executive act that allegedly exceeds the official's authority.").

Mr. Moats of any vestige of his Seventh Amendment right to try the common law allegations made against him to a jury of his peers.

61. ALJ Whang herself has acknowledged in other contexts that the rules of the OFIA do not permit impaneling a jury.[5] Subjecting Mr. Moats to an unconstitutional show trial imposes the serious here-and-now injury upon him of forcing him to prepare for and submit to a tribunal that not only will not—but cannot—grant him his constitutional rights.

62. For all of these reasons, Mr. Moats seeks a declaration that the enforcement proceeding and "hearing" contemplated by the NCUA and ALJ Whang violate the Seventh Amendment by depriving Mr. Moats of his right to a jury.

> **Count 4**     **(Declaratory Relief) The Procedure Required by the NCUA and ALJ Whang Violate Mr. Moats's Fifth Amendment Due Process Rights.**

63. Each preceding paragraph of this Complaint is incorporated by reference as if restated fully in connection with this Count.

64. The cumulative effect of the procedural defects described above deprive Mr. Moats of the Due Process required by the Fifth Amendment. Even if the NCUA's claims could be heard by an ALJ, the Constitution requires an ALJ subject to at-will removal by the President. ALJ Whang is not removable at will. The Constitution requires a jury. No jury is available. The Constitution forbids the NCUA's structure. It has investigated and charged Mr. Moats anyway.

65. It is difficult to imagine a more effective method of insulating the NCUA and its "trials" on "charges" from the democratic processes than the one Congress created for NCUA,

---

[5] *See In re Ortega, et al.*, Office of Comptroller of Currency, Docket Nos. AA-EC-2017-44, -45, *available at*, https://www.ofia.gov/decisions/2022-07-07-occ-aa-ec-2017-44.pdf (Whang, ALJ) ("As a procedural matter, neither the Uniform Rules of Practice and Procedure that govern these administrative enforcement proceedings1 ('Uniform Rules') nor the underlying statutory scheme [applicable in that matter] provide for the empanelment of juries in connection with a hearing before this Tribunal, and [an OFIA ALJ] has no authority to grant such relief.")

which the NCUA has leveraged at every step. In this case, every constitutional guarantee insuring the NCUA, as an instrument and exercise of government power, is of the people, by the people, and acting for the people—including Mr. Moats—is being ignored, and thereby destroyed.

66. In addition to the other constitutional violations discussed above, the cumulative effect of depriving Mr. Moats of a neutral decisionmaker through constitutional mechanisms violates the Fifth Amendment's Due Process Clause. Indeed, the Constitution's requirement of direct removal for ALJs effectively collapses the investigatory, charging, and adjudicatory functions for the common law remedies sought by the NCUA in this case into a singular executive office. This creates the unavoidable consequence that Mr. Moats cannot have a neutral decisionmaker—in addition to the other constitutional issues discussed above.

67. In any event, the process created by Congress for adjudicating the NCUA's charges against Mr. Moats transgresses so violently and so completely on the structural and specific constitutional provisions created to protect him that it also violates his Due Process rights.

68. For these reasons, Mr. Moats seeks a declaration that the enforcement proceeding and "hearing" contemplated by the NCUA and ALJ Whang violate his Due Process rights under the Fifth Amendment.

## ATTORNEYS' FEES

69. Pursuant to 42 U.S.C. § 1988, Mr. Moats is entitled to recover attorneys' fees and costs, including expert fees.

## DEMAND FOR TRIAL BY JURY

70. Plaintiff hereby demands a trial by jury on all claims for which the law provides a right to a jury trial. The jury fee is tendered herewith.

## **CONCLUSION AND PRAYER**

71. Plaintiff respectfully prays that all Defendants be cited to appear and answer herein, and that Plaintiff have the declaratory judgments against Defendants, as prayed for herein, and the Plaintiff recover his attorneys' fees and costs of court, including expert fees, and all further relief, both legal and equitable, as to which Plaintiff shows himself justly entitled.

Filed: May 15, 2023

Respectfully submitted,

/s/ Russell Hardin, Jr.
Russell Hardin, Jr.
*Attorney-in-Charge*
State Bar No. 08972800
Federal I.D. No. 19424

OF COUNSEL:
RUSTY HARDIN & ASSOCIATES, LLP
Terry D. Kernell
State Bar No. 11339020
Federal I.D. No. 15074
John MacVane
State Bar No. 24085444
Federal I.D. No. 2209776
1401 McKinney Street, Suite 2250
Houston, Texas  77010
Telephone:  (713) 652-9000
Facsimile:  (713) 652-9800
Email:  rhardin@rustyhardin.com
Email:  tkernell@rustyhardin.com
Email:  jmacvane@rustyhardin.com

**COUNSEL FOR PLAINTIFFS**