# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

JEFFREY MOATS,

     Plaintiff,

v.

NATIONAL CREDIT UNION
ADMINISTRATION BOARD,
a federal administrative agency;
TODD M. HARPER, KYLE S.
HAUPTMAN, AND RODNEY E.
HOOD, in their official capacity as
Members of the National Credit
Union Administration Board; and
JENNIFER WHANG, in her
official capacity as an
Administrative Law Judge and
Inferior Officer of the United States,

     Defendants.

Civil Action No. 3:23-cv-147

Assigned to:
Hon. Jeffrey V. Brown

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Oral Argument Requested
(Per LR7.5.A)

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ............................................................. ii

Glossary ............................................................................. vii

Introduction ......................................................................... 1

Facts .................................................................................... 2

Standard of Review ............................................................. 4

Argument ............................................................................. 4

I.   Three Layers of Removal Protection for ALJ Whang, an Executive Officer of the United States, Violates Article II ....................................... 4

    A.   ALJ Whang Is an Executive Officer of the United States ............... 5

    B.   ALJ Whang Is Unconstitutionally Shielded from Removal ............ 7

II.  The Seventh Amendment Guarantees Mr. Moats a Jury Trial ............. 8

    A.   Government Suits Seeking Civil Monetary Penalties from Private Parties Require a Trial by Jury ........................................... 8

    B.   Congress Cannot Assign Suits Seeking Civil Monetary Penalties to Agency Adjudication Without a Jury Trial ................ 10

III. Administratively Proceeding Against Mr. Moats Deprives Him of the Due Process of Law ....................................................... 11

    A.   NCUA's Overlapping Roles Deprive Mr. Moats of the Due Process of Law ....................................................................... 12

    B.   NCUA's In-House Adjudication Does Not Follow Settled Common-Law Adjudication Procedure, Which Deprives Mr. Moats of the Due Process of Law ................ 16

IV.  Giving NCUA the Power to Bring In-House Adjudicative Actions Against Private Parties like Mr. Moats Violates the Nondelegation Doctrine ................................................................ 19

Conclusion ........................................................................ 22

Certificate of Service ......................................................... 23

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ............................................................................4

*Atlas Roofing Co. v. OSHRC*,
   430 U.S. 442 (1977) ................................................................... 19–20

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
   575 U.S. 138 (2015) ..........................................................................18

*Bowsher v. Synar*,
   478 U.S. 714 (1986) ............................................................................4

*Caperton v. A.T. Massey Coal Co.*,
   556 U.S. 868 (2009) .................................................... 14–16, 19

*City of Arlington v. FCC*,
   569 U.S. 290 (2013) ..........................................................................18

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
   526 U.S. 687 (1999) ............................................................................9

*Crowell v. Benson*,
   285 U.S. 22 (1932) ................................................................... 12, 20

*Curtis v. Loether*,
   415 U.S. 189 (1974) ............................................................................9

*Free Enterprise Fund v. PCAOB*,
   561 U.S. 477 (2010) .......................................................................7–8

*Freytag v. CIR*,
   501 U.S. 868 (1991) ............................................................................5

*Gibson v. Berryhill*,
   411 U.S. 564 (1973) ..........................................................................12

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989) ................................................................... 10–11

*Gundy v. United States*,
  139 S. Ct. 2116 (2019) ............................................................... 21–22

*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ...............................................*passim*

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018) ...............................................................5–6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................4

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .................................................... 16, 18–19

*In re Murchison*,
  349 U.S. 133 (1955) ...................................................................12

*Myers v. United States*,
  272 U.S. 52 (1926) .......................................................................4

*N. Pipeline Const. Co. v. Marathon Pipe Line Co.*,
  458 U.S. 50 (1982) ......................................................................19

*Oceanic Steam Navigation Co. v. Stranahan*,
  214 U.S. 320 (1909) .............................................................. 19–20

*Panama Refining Co. v. Ryan*,
  293 U.S. 388 (1935) .............................................................. 21–22

*Parsons v. Bedford*,
  28 U.S. 433 (1830) .......................................................................9

*Plaut v. Spendthrift Farm, Inc.*,
  514 U.S. 211 (1995) ...................................................................16

*Ross v. Bernard*,
  396 U.S. 531 (1970) .....................................................................9

*SEC v. Lipson*,
  278 F.3d 656 (7th Cir. 2002) ......................................................9

*SEC v. Solow*,
  554 F. Supp. 2d 1356 (S.D. Fla. 2008) ....................................10

*Stern v. Marshall,*
    564 U.S. 462 (2011) ................................................................. 12, 16, 18–19

*Tull v. United States,*
    481 U.S. 412 (1987) ........................................................................................9

*United States v. Arthrex,*
    141 S. Ct. 1970 (2021) ................................................................... 5–7, 18

*Wayman v. Southard,*
    23 U.S. 1 (1825) ...........................................................................................20

## Constitutions

U.S. Const. amend. V ............................................................................ *passim*

U.S. Const. amend. VII ......................................................................... *passim*

U.S. Const. amend. VII ................................................................................8

U.S. Const. art. I, § 1 ....................................................................................20

U.S. Const. art. II ............................................................................... 1, 4–5

U.S. Const. art. II, §1, cl. 1 ..........................................................................4

U.S. Const. art. III ................................................................................ *passim*

U.S. Const. art. III, § 1 ...............................................................................11

## Statutes

5 U.S.C. § 1202(d) .........................................................................................7

5 U.S.C. § 3105 ...............................................................................................5

5 U.S.C. § 7521 ...............................................................................................5

5 U.S.C. § 7521(a) .........................................................................................7

12 U.S.C. § 242 ...............................................................................................8

12 U.S.C. § 1766(d) .....................................................................................13

12 U.S.C. § 1786 ...........................................................................................21

12 U.S.C. § 1786(e) ........................................................................ 12, 21

12 U.S.C. § 1786(g) ....................................................................... 12, 21

12 U.S.C. § 1786(k) ..................................................................... 9, 12, 21

12 U.S.C. § 1786(k)(2)(I) ...................................................................13

12 U.S.C. § 1786(k)(2)(E) ..................................................................13

12 U.S.C. §§ 1787(b) & (c) ................................................................14

12 U.S.C. § 1812(a)(1) ........................................................................8

12 U.S.C. § 1812(c)(1) ........................................................................8

12 U.S.C. § 1812(c)(3) ........................................................................8

Tex. Fin. Code § 126.152 ..................................................................14

## Regulations

12 C.F.R. § 747.4 .............................................................................13

12 C.F.R. § 747.5(a) ...........................................................................5

12 C.F.R. § 747.5(b) ...........................................................................6

12 C.F.R. § 747.5(b)(1) .......................................................................6

12 C.F.R. § 747.5(b)(2) .......................................................................6

12 C.F.R. § 747.5(b)(3) .......................................................................6

12 C.F.R. § 747.5(b)(5) .......................................................................6

12 C.F.R. § 747.5(b)(7) .......................................................................6

12 C.F.R. § 747.5(b)(11) .....................................................................6

12 C.F.R. § 747.16 ...........................................................................17

12 C.F.R. § 747.18(a)(1) ...............................................................12−13

12 C.F.R. § 747.25(h) .........................................................................6

12 C.F.R. § 747.28 ....................................................................................13

12 C.F.R. § 747.36(a)(3) .........................................................................17

12 C.F.R. §§ 747.38–.40 .........................................................................13

12 C.F.R. § 747.38(a) ................................................................................6

12 C.F.R. § 747.100(a) ...........................................................................17

12 C.F.R. § 747.100(b) ...........................................................................17

12 C.F.R. § 750.7 ...................................................................................14

## Rules

Fed. R. Civ. P. 30....................................................................................17

Fed. R. Civ. P. 56(a) ................................................................................4

## Other Authorities

Chapman, Nathan S. & McConnell, Michael W., *Due Process as Separation of Powers*, 121 Yale L.J. 1672 (2012) ........................................18

Lawson, Gary, *Take the Fifth … Please!: The Original Insignificance of the Fifth Amendment's Due Process Clause*, 2017 B.Y.U. L. Rev. 611....................................................................18

Nelson, Caleb, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559 (2007) ..............................................18

Resp. & Reply Br. of Appellants/Cross-Appellees (filed May 1, 2023), *Burgess v. Whang*, No. 22-11172 (5th Cir.) ........................................8

## Glossary

ALJ        Administrative Law Judge

CIR        Commissioner of Internal Revenue

ETCU       Edinburg Teachers Credit Union

FDIC       Federal Deposit Insurance Corporation

FRCP       Federal Rules of Civil Procedure

MSPB       Merit System Protection Board

NCUA       National Credit Union Administration

OCC        Office of the Comptroller of the Currency

OSHRC      Occupational Safety and Health Review Commission

PCAOB      Public Company Accounting and Oversight Board

SEC        Securities and Exchange Commission

## Introduction

In March 2021, the National Credit Union Administration (NCUA), acting as the Edinburg Teachers Credit Union's conservator, fired Jeffrey Moats from the position he had held for 25 years as CEO of the Credit Union. Mr. Moats turned to the courts and was successful in obtaining thousands of dollars' worth of his personal property that was withheld from him by NCUA and the Credit Union. He was forced to turn again to the courts in March 2023 to seek the post-termination benefits he is owed by the Credit Union.

The very next month, however, NCUA served Mr. Moats with a Notice of Charges seeking at least $4 million in restitution, at least $1 million in civil penalties, and a lifetime industry ban. NCUA filed the case *with itself*. That is, NCUA brought an administrative enforcement action against Mr. Moats by filing it with an in-house administrative law judge. NCUA thus acts as Mr. Moats's prosecutor, juror, judge, appeals court, and executioner.

By proceeding against Mr. Moats before its own Administrative Law Judge, who is insulated by multiple layers of removal protection, NCUA violates Article II. By seeking civil monetary penalties from the ALJ, NCUA violates the Seventh Amendment, which guarantees Mr. Moats a trial by jury. By going to its own ALJ to seek monetary fines, restitution, and a lifetime industry ban, NCUA violates Article III and the Fifth Amendment's Due Process Clause. And, by giving NCUA the unfettered power to choose whether to proceed against Mr. Moats in-house or in Article III courts, the relevant statute violates the nondelegation doctrine. NCUA's case against Mr. Moats is a separation of powers debacle.

1

Accordingly, the Court should grant Mr. Moats declaratory relief and enjoin NCUA from proceeding with its in-house action against him.

## Facts

The relevant facts are undisputed. The parties have entered a Joint Stipulation of Facts. Doc. 22 ("Stip."). Those facts are repeated below, avoiding the awkward incorporation by reference.

"The Defendant members of the National Credit Union Administration (NCUA) Board of Directors are removable by the President at will despite the statutory six-year terms established by Section 102(c) of the Federal Credit Union Act, 12 U.S.C. § 1752a(c)." Stip. ¶ 1.

"On March 26, 2021, the Texas Credit Union Department issued a Conservatorship Order placing the Edinburg Teachers Credit Union in conservatorship and appointing the NCUA Board as conservator." Stip. ¶ 3.

Jeffrey Moats served as CEO of Edinburg Teachers Credit Union ("ETCU" or "Credit Union") for over 25 years. Mr. Moats was fired on March 26, 2021, the same day the Credit Union was placed in conservatorship with the NCUA. Stip. ¶ 3.

"The Edinburg Teachers Credit Union was released from conservatorship on January 27, 2023." Stip. ¶ 3.

In March 2023, Mr. Moats sued the Credit Union in Texas state court to recoup unpaid post-termination benefits of over a million dollars that are owed to him. *See Jeffrey Moats v. Edinburg Teachers Credit Union*, No. C-1141-23-F (Mar. 21, 2023), in the 332nd Judicial District Court, Hidalgo County, Texas. That matter is pending and being actively litigated.

On April 20, 2023, NCUA served Mr. Moats with a "Notice of Charges, Notice of Assessment of Civil Money Penalty, and Notice of Hearing" based on disagreement regarding the unpaid post-termination benefits. Doc. 26 at 20–39. "The NCUA Board members understood themselves to be removable at will at the time they made the decision to file the Notice of Charges, Notice of Assessment of Civil Money Penalty, and Notice of Hearing against Plaintiff Jeffrey Moats on April 20, 2023." Stip. ¶ 2. The adjudication of NCUA's Notice of Charges was assigned to ALJ Jennifer Whang, who is one of the Defendants in this case.

On May 15, 2023, Mr. Moats filed this suit. Doc. 1. Thereafter, the parties jointly moved for, and ALJ Whang granted, a stay of NCUA's in-house adjudication "until there is final judgment" in this suit. Doc. 26 at 41–42. The NCUA administrative matter remains pending.

Relevant at least to Count 1 regarding multiple layers of removal protection for ALJs deciding NCUA cases: "The Administrative Law Judge Agreement of 2018, attached [to the Joint Stipulation] as Exhibit A [Doc. 22-1], is currently in effect and, other than some minor changes to office space allocations not relevant in this action, has not been modified since it was executed by the parties to the agreement." Stip. ¶ 4 & Doc. 22-1, Ex. A. The ALJ Agreement is also attached to the amended complaint. *See* Doc. 26 at 44–58.

The ALJ Agreement, Doc. 22-1, defines "Office Staff" to include "administrative law judges" serving NCUA, the Federal Deposit Insurance Corporation (FDIC), Board of Governors of the Federal Reserve System

3

(Federal Reserve), and Office of the Comptroller of the Currency (OCC). Doc. 22-1 at 2–3. It further provides: "Any change to the Office Staff personnel shall be subject to the prior written approval of all Agencies." Doc. 22-1 at 4.

## Standard of Review

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). The summary-judgment movant "must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (simplified). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Argument

## I. Three Layers of Removal Protection for ALJ Whang, an Executive Officer of the United States, Violates Article II

The Constitution requires that "[t]he executive Power shall be vested in a President," that the President "shall take Care that the Laws be faithfully executed," and that the President "shall Commission all the Officers of the United States." U.S. Const. art. II, §1, cl. 1; *id.* § 3. The Supreme Court has consistently recognized the President's power to remove executive officers of the United States. *See, e.g.*, *Bowsher v. Synar*, 478 U.S. 714, 723 (1986). To conclude otherwise "would make it impossible for the President … to take care that the laws [are] faithfully executed." *Myers v. United States*, 272 U.S. 52, 164 (1926).

To be an officer of the United States, the individual must occupy a "continuing position established by law" and must exercise "significant authority pursuant to the laws of the United States." *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018) (simplified). Under *United States v. Arthrex*, 141 S. Ct. 1970, 1982 (2021), it violates Article II if an executive officer is protected with multiple layers of removal protection. *See Jarkesy v. SEC*, 34 F.4th 446, 463–65 (5th Cir. 2022).

### A.     ALJ Whang Is an Executive Officer of the United States

In *Lucia*, the Supreme Court held that Securities and Exchange Commission (SEC) ALJs were officers of the United States within the meaning of the Appointments Clause. *Id.* at 2053–55 (comparing SEC ALJs to the U.S. Tax Court's "special trial judges," found to be officers under *Freytag v. CIR*, 501 U.S. 868, 882 (1991)).

The authority of NCUA ALJs mirrors that of SEC ALJs and, accordingly, they are officers of the United States. NCUA ALJs are appointed by law to a continuing position from which they can be removed only "for good cause." 5 U.S.C. § 3105, 7521. They exercise "significant authority." *Lucia*, 138 S. Ct. at 2051. They have "all powers necessary to conduct a proceeding" "in accordance with the provisions of chapter 5 of title 5 of the United States Code." 12 C.F.R. § 747.5(a). And they wield "significant discretion when carrying out important functions" as chronicled in law. *Lucia*, 138 S. Ct. at 2053 (simplified). Indeed, the powers of NCUA ALJs are virtually indistinguishable from those of the SEC ALJs at issue in *Lucia*:

| NCUA ALJ | SEC ALJ |
|---|---|
| "all powers necessary," 12 C.F.R. § 747.5(b), "[t]o do all other things necessary and appropriate to discharge the duties of a presiding officer," *id.* § 747.5(b)(11) | "do all things necessary and appropriate," *Lucia*, 138 S. Ct. at 2049 |
| "administer oaths," "rule upon all procedural and other motions," and "regulate the course of the hearing and the conduct of the parties and their counsel," *id.* § 747.5(b)(1), (5), (7) | "administer oaths, rule on motions, and generally regulate the course of a hearing, as well as the conduct of parties and counsel," *id.* at 2053 (simplified) |
| "rule upon the admission of evidence," *id.* § 747.5(b)(3) | "rule on the admissibility of evidence," *id.* at 2053 |
| "compel" discovery, impose "sanctions," and "issue a subpoena," *id.* § 747.5(b)(2), 747.25(h) | "enforce compliance with discovery orders," *id.* at 2053 |
| issue "recommended decision, recommended findings of fact, recommended conclusions of law, and proposed order," *id.* § 747.38(a) | "issue decisions containing factual findings, legal conclusions, and appropriate remedies," *id.* at 2053 |

Accordingly, ALJs hearing NCUA cases are officers of the United States. ALJ Whang, the presiding hearing officer for NCUA's case against Mr. Moats, is an officer of the United States.

Moreover, ALJs like ALJ Whang are officers in the *executive* branch. *Arthrex* explained that, even if the "duties" of executive-agency hearing officers "partake of a Judiciary quality," these officers "exercis[e] executive power" because they operate within the executive branch. 141 S. Ct. at 1982 (simplified).

**B.    ALJ Whang Is Unconstitutionally Shielded from Removal**

*Free Enterprise Fund v. PCAOB* held that two layers of removal protection for executive officers like ALJ Whang runs afoul of the Appointments Clause. 561 U.S. 477, 492 (2010). *Jarkesy*, 34 F.4th at 463–65, likewise held that "two layers of insulation impedes the President's power to remove ALJs based on their exercise of the discretion granted to them."

Here, ALJ Whang is shielded by not two but *three* layers of removal protection:

First, the Merit System Protection Board (MSPB) must find "good cause," on the record and after an opportunity for a hearing, to remove ALJs. 5 U.S.C. § 7521(a).

Second, MSPB members themselves enjoy protection and can be removed by the President only for inefficiency, neglect of duty, or malfeasance in office. 5 U.S.C. § 1202(d).

Third, under the interagency ALJ Agreement, four banking agencies ((1) the FDIC, (2) the Federal Reserve, (3) the OCC, and (4) the NCUA) must *unanimously* agree to remove ALJ Whang from their pool of ALJs. Doc. 22-1; Doc. 26 at 44–58. The Agreement states, "Any change to the Office Staff personnel shall be subject to the prior written approval of all Agencies," and defines "Office Staff" to include "administrative law judges" and includes ALJs under Office Staff. Doc. 22-1 § 2. The heads of at least one of these four banking

agencies, the Federal Reserve Board of Governors, can be removed by the President only "for cause." 12 U.S.C. § 242.[1]

It is impossible to reconcile this three-level "Matryoshka doll" of protections for ALJ Whang with the Constitution's separation of powers and the Supreme Court's precedent on removal. *Free Enterprise Fund*, 561 U.S. at 497. The Court should so hold and enjoin NCUA from proceeding against Mr. Moats in its in-house tribunal.

## II. The Seventh Amendment Guarantees Mr. Moats a Jury Trial

### A. Government Suits Seeking Civil Monetary Penalties from Private Parties Require a Trial by Jury

The Seventh Amendment provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. *Jarkesy* concluded that the "Seventh Amendment guarantees" private parties like Mr. Moats "a jury trial" where the agency's in-house "enforcement action is akin to traditional actions at law." 34 F.4th at 451. Neither "Congress," nor "an agency acting pursuant to congressional authorization," can "assign the adjudication of such claims to an agency because such claims do not concern public rights alone." *Id.*

The Supreme Court has concluded that the Seventh Amendment jury-trial right is guaranteed in all actions akin to those brought at common law.

---

[1]     The Defendants have stipulated the removability of the NCUA board members who serve a fixed six-year term. Stip. ¶¶ 1–2. Relatedly, three of the five FDIC board members purport to enjoy implied, fixed-term, for-cause removal protection, 12 U.S.C. §§ 1812(a)(1), (c)(1), (c)(3), though FDIC is not contesting removability on appeal in another case. *Burgess v. Whang*, No. 22-11172 (5th Cir.), Resp. & Reply Br. of Appellants/Cross-Appellees (Doc. 95) at 44 (filed May 1, 2023).

*Tull v. United States*, 481 U.S. 412, 417 (1987) (citing *Parsons v. Bedford*, 28 U.S. 433 (1830)); *Jarkesy*, 34 F.4th at 452. The Seventh Amendment applies to suits "brought under a statute" if the suit "seeks common-law-like legal remedies." *Jarkesy*, 34 F.4th at 452; *see also Tull*, 481 U.S. at 417 (citing *Curtis v. Loether*, 415 U.S. 189, 193 (1974)). Specifically, "the Seventh Amendment jury-trial right applies to suits brought under a statute seeking civil penalties." *Jarkesy*, 34 F.4th at 452. *Tull* confirms that "[a]ctions by the Government to recover civil penalties under statutory provisions therefore historically have been viewed as one type of action in debt requiring trial by jury." 481 U.S. at 418–19. It is "settled law" "that the Seventh Amendment jury guarantee extends to statutory claims unknown to the common law, so long as the claims can be said to 'sound basically in tort,' and seek legal relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999) (simplified).

NCUA's administrative suit seeks, among other things, a "civil money penalty of at least $1,000,000" under 12 U.S.C. § 1786(k). Doc. 26 at 21, 36. An action for recovery of civil monetary penalties is akin to "an action in debt within the jurisdiction of English courts of law." *Tull*, 481 U.S. at 418. NCUA seeks this "common-law-like legal remed[y]" "under a statute." *Jarkesy*, at 452. The action therefore "requir[es] trial by jury." *Tull*, 481 U.S. at 419.

Further, the Supreme Court in *Ross v. Bernhard* concluded that where there is a mix of legal and equitable claims, the facts relevant to the legal claims should be adjudicated by a jury, even if those facts relate to the equitable claims too. 396 U.S. 531, 537–38 (1970); *see also SEC v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002) ("Because the SEC was seeking both legal and

equitable relief [including civil penalties], [Lipson] was entitled to and received a jury trial."); *SEC v. Solow*, 554 F. Supp. 2d 1356, 1367 (S.D. Fla. 2008) (same). In *Jarkesy*, the SEC sought to ban Jarkesy from the industry and require restitution, both of which are viewed as "equitable remedies." 34 F.4th at 454. Still, *Jarkesy* concluded that the "penalty facet of the action suffices for the jury-trial right to apply to an adjudication of the underlying facts." *Id.* at 454–55.

So too here. NCUA seeks against Mr. Moats a lifetime industry ban and restitution alongside the civil monetary penalty. Doc. 26 at 21. The monetary penalty NCUA seeks makes the entire "adjudication of the underlying facts" subject to the Seventh Amendment trial by jury. *Jarkesy*, 34 F.4th at 455.

## B.    Congress Cannot Assign Suits Seeking Civil Monetary Penalties to Agency Adjudication Without a Jury Trial

The Supreme Court's public-rights cases also do not "permit Congress to assign [common-law claims] to agency adjudication without a jury trial." *Id.* at 453. *Jarkesy* acknowledges that "[f]raud prosecutions"—like the one NCUA claims against Mr. Moats, *see* Doc. 26 at 20 ("Bank Fraud"), 24 ("Moats defrauded the Credit Union in violation of federal law[.]"), 36 ("Moats knowingly caused a substantial loss to [the Credit Union] and substantial pecuniary gain to himself.")—"were regularly brought in English courts at common law." 34 F.4th at 453; *see id.* at 455 (discussing "elements of common-law fraud").

NCUA's administrative action against Mr. Moats is not one that is focused on public rights. In *Granfinanciera, S.A. v. Nordberg*, the Supreme

Court explained that "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity." 492 U.S. 33, 61 (1989). "Purely private suits" for fraud, *Jarkesy* noted, "would have a similar public purpose," but that "does not mean such suits concern public rights at their core." 34 F.4th at 457. In *Jarkesy*, as here, the enforcement action seeking monetary penalties was one for "fraud, which is nothing new and nothing foreign to Article III tribunals and juries." *Id.* So, Mr. Moats has a Seventh Amendment right to a jury trial for the entire "liability-determination portion" of NCUA's case against him. *Id.* The Court should so declare and enjoin NCUA from proceeding against Mr. Moats in its in-house forum.

## III.   Administratively Proceeding Against Mr. Moats Deprives Him of the Due Process of Law

The Constitution's Fifth Amendment provides: "No person shall be … deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. And Article III says that the "judicial Power of the United States" is vested exclusively "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. To help ensure independence, the "Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." *Id.* Together, the Fifth Amendment's Due Process Clause and the Article III Vesting Clause guarantee

an independent judgment by an independent judge—and the Constitution does not vest the judicial power of the United States in the executive branch.

Instead of filing suit in federal court, NCUA's board "made the decision to file the Notice of Charges" against Mr. Moats—with itself. Stip. ¶ 2; 12 C.F.R. § 747.18(a)(1). Through its in-house action, NCUA seeks an administrative order and judgment against Mr. Moats—from itself. The relief NCUA seeks is to impose a lifetime industry ban on Mr. Moats, Doc. 26 at 35, "at least" $4 million in restitution payable by Mr. Moats to ETCU, Doc. 26 at 36, and "at least" $1 million civil monetary penalty. Doc. 26 at 36. NCUA— which is not an Article III court—thus seeks to deprive Mr. Moats of private property under the aegis of federal statutes (12 U.S.C. § 1786(e), (g), (k)) that are "within the bounds of federal jurisdiction," but assign to itself "the responsibility for deciding that suit" and thereby oust "Article III judges in Article III courts" from doing the "job" the Constitution has only ever assigned to the judicial department. *Stern v. Marshall*, 564 U.S. 462, 484 (2011). Plus, *Crowell v. Benson* held that matters "of private right, that is, of the liability of one individual to another under the law as defined," 285 U.S. 22, 50–51 (1932)—as here, restitution to ETCU—cannot be assigned by Congress for decision outside of Article III.

## A.  NCUA's Overlapping Roles Deprive Mr. Moats of the Due Process of Law

"A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955). This rule applies to administrative adjudications as well as to courts. *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973).

But NCUA wears multiple hats, creating an inherently unfair process. In NCUA administrative adjudication the prosecutor and executor also plays the adjudicator role. And that deprives Mr. Moats of the due process of law.

*NCUA as prosecutor*: NCUA's board "made the decision to file the Notice of Charges" against Mr. Moats. Stip. ¶ 2; 12 C.F.R. § 747.18(a)(1). It then acted (and will continue to act if the administrative stay is lifted) through the NCUA board's "Enforcement Counsel" as Mr. Moats's prosecutor. Doc. 26 at 41.

*NCUA as jury, judge, appellate court*: Its "Office Staff," Doc. 22-1 at 2–3, that is, ALJ Whang, would then act as the fact-finding jury and the judge resolving questions of law. An appeal from ALJ Whang's decision goes to the NCUA board, 12 C.F.R. §§ 747.38–.40, which, because it decided to charge him in the first place, is nothing like an independent appellate court. *See also* 12 C.F.R. § 747.4 (The NCUA board can "at any time … perform, direct the performance of, or waive performance of, any act which could be done or ordered by the administrative law judge."); 12 C.F.R. § 747.28 (interlocutory appeal from ALJ's decision goes to the NCUA board). NCUA would therefore also act as the appellate court to decide an appeal taken from the ALJ's decision.

*NCUA as executor, and judgment collector*: If NCUA decides in favor of itself, it would then "execute" the NCUA board's judgment against Mr. Moats. 12 U.S.C. §§ 1766(d); 1786(k)(2)(E) & (2)(I). And it will be the judgment collector for the civil monetary penalty it wants to levy against Mr. Moats. 12 U.S.C. § 1786(k)(2)(E) & (2)(I).

13

*NCUA as conservator*: To top it all off, NCUA took Edinburg Teachers Credit Union (Mr. Moats's former employer) into conservatorship on March 26, 2021, Stip. ¶ 3, and the same day fired Mr. Moats, having exempted itself, 12 C.F.R. § 750.7, from having to pay the post-termination benefits contractually vested and owed to Mr. Moats. 12 U.S.C. §§ 1787(b) & (c); Tex. Fin. Code § 126.152.[2]

NCUA thus plays multiple roles—employer firing an employee, prosecutor, jury, judge, appellate court, executor of an award of monies payable by Mr. Moats, and judgment collector. NCUA's proceedings plainly violate the ancient maxim, protected by the Fifth Amendment's Due Process Clause, that no one should be a judge in its own cause—*nemo iudex in causa sua. See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886 (2009) ("[N]o man is allowed to be a judge in his own cause[.]"); *The Federalist No. 10* ("No man is allowed to be a judge in his own cause, because his interest would certainly bias his judgment, and not improbably, corrupt his integrity.").

*Caperton* established an "objective" test: it violates the Due Process Clause if the "probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." 556 U.S. at 877 (simplified). The question is whether "under a realistic appraisal of psychological tendencies and human weakness," the prosecutor-qua-adjudicator-qua-executioner setup "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due

---

[2]    After the conservatorship arrangement concluded on January 27, 2023, Stip. ¶ 3, Mr. Moats could then seek those post-termination benefits from ETCU, his former employer. He has done so in the pending state litigation cited above.

process is to be adequately implemented." *Id.* at 883–84. If the risk is not "constitutionally tolerable," then "due process requires recusal" of the adjudicator. *Id.* at 872. That is, the agency's adjudicator role must end if the agency also acts as the prosecutor on the front end and the executioner on the back end.

In *Caperton*, the trial jury entered a verdict of $50 million in damages against a coal company. *Id.* at 872. Knowing the appeal would go to the state's high court, the coal company's principal officer supported a candidate running for election to be a judge of the high court by contributing $3 million to the candidate's election campaign. *Id.* at 873. That candidate was elected to the state high court and he then denied three motions to recuse himself from the case. *Id.* at 873–75. And a bare majority of the court reversed the jury verdict. *Id.* at 875. That is, the coal company won. The Supreme Court held that "even the appearance of partiality" or "impropriety" requires recusal under the Due Process Clause.

So too here. NCUA fired Mr. Moats. NCUA then commenced an administrative action against him. NCUA will decide both questions of fact and questions of law in that action. And then NCUA will execute that action to collect fines and restitution from Mr. Moats and enforce the industry ban. The "risk of … bias or prejudgment" is "too high." *Id.* at 877, 883–84.

So, the Due Process Clause "requires recusal," *id.* at 872, which means this Court should enjoin NCUA from adjudicating its in-house action against Mr. Moats. The alternative is simple: Only courts of law, exercising the

"judicial Power," may issue "judgments" and deprive private parties of property. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995).

### B.   NCUA's In-House Adjudication Does Not Follow Settled Common-Law Adjudication Procedure, Which Deprives Mr. Moats of the Due Process of Law

Before depriving Mr. Moats of his property NCUA must at least follow common-law procedure—and, as noted above, seek an independent judgment from an independent Article III court. But even if NCUA could proceed against Mr. Moats in its home tribunal, despite *Caperton* and the overlapping functions performed by NCUA, NCUA still is in no position to afford litigants the same procedural and evidentiary rights as federal courts do. And that separately violates the Fifth Amendment's Due Process Clause, *Mathews v. Eldridge*, 424 U.S. 319 (1976), *Stern*, 564 U.S. at 482–84.

The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (simplified). This means that before NCUA can deprive Mr. Moats of millions of dollars of private property and impose a lifetime industry ban (a substantial "private interest"), this Court must evaluate "the risk of an erroneous deprivation through the procedures used," "the probable value, if any, of additional or substitute procedural safeguards," and "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The procedures used during NCUA's in-house proceedings increase the risk of erroneously depriving Mr. Moats of substantial private property.

Moreover, substitute procedural requirements that comport with due process are readily available in Article III courts—they have been for centuries.

For example, under FRCP 30, parties to a federal lawsuit may take up to 10 depositions. But in NCUA's in-house proceedings, parties "may obtain discovery only through the production of documents. No other form of discovery shall be allowed." 12 C.F.R. § 747.100(a). If the ALJ permits a person to be deposed, "all questioning shall be strictly limited to the identification of documents produced by that person and a reasonable examination to determine whether the subpoenaed person made an adequate search for, and has produced, all subpoenaed documents." 12 C.F.R. § 747.100(b). NCUA places private parties like Mr. Moats at a distinct disadvantage even while expressly giving itself wide latitude: "Nothing contained in this subpart limits in any manner the right of the NCUA to conduct any examination, inspection, or visitation of any institution or institution-affiliated party, or the right of the NCUA to conduct or continue any form of investigation authorized by law." 12 C.F.R. § 747.16.

ALJ Whang has more discretion over adjudicative proceedings and the parties than do Article III judges. For instance, while the Federal Rules of Evidence generally apply to NCUA hearings, "[e]vidence that would be inadmissible under the Federal Rules of Evidence may not be deemed or ruled to be inadmissible in a proceeding conducted pursuant to this subpart if such evidence is relevant, material, reliable and not unduly repetitive." 12 C.F.R. § 747.36(a)(3).

Court-style procedural and evidentiary rules have been distilled over centuries in order to enable neutral adjudicators to comply with notions of basic fairness and due process. By switching off some of those rules while creating others, NCUA's in-house proceedings give it a distinct litigating advantage over nongovernmental parties such as Mr. Moats. Such built-in bias violates the Due Process Clause because it flunks the *Mathews* test.

At day's end, even if NCUA could institute this in-house adjudicative proceeding in front of an ALJ (itself) using only (and all of) the Federal Rules of Civil Procedure and Federal Rules of Evidence, that adjudication would still be presided over by officers of the *executive* branch, not of the *judicial* branch—namely, ALJ Whang and the NCUA board. As the Supreme Court put it, "[t]he activities of executive officers may take legislative and judicial forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the executive power for which the President is ultimately responsible." *Arthrex*, 141 S. Ct. at 1982 (quoting *City of Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013)) (simplified); *Stern*, 564 U.S. at 482–84.[3]

---

[3]   *See also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 171 (2015) (Thomas, J., dissenting) (The "adjudication of core private rights is a function that can be performed only by Article III courts, at least absent the consent of the parties to adjudication in another forum.") (citing Caleb Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 561–740 (2007)); Nathan S. Chapman & Michael W. McConnell, *Due Process as Separation of Powers*, 121 Yale L.J. 1672, 1679 (2012) (explaining that, for centuries, "due process" has "consistently referred to the guarantee of legal *judgment* in a case by an authorized *court* in accordance with settled law") (emphasis added); Gary Lawson, *Take the Fifth … Please!: The Original Insignificance of the Fifth Amendment's Due Process Clause*, 2017 B.Y.U. L. Rev. 611, 631–32 (noting the "judicial Power" requires independent judges to provide due process of law).

Such agency adjudication is unconstitutional because the "Constitution assigns that job—resolution of 'the mundane as well as the glamorous, matters of common law and statute as well as constitutional law, issues of fact as well as issues of law'—to the Judiciary." *Stern*, 564 U.S. at 484 (quoting *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 86–87, n.39 (1982)). Under *Mathews*, *Stern*, *Crowell*, and *Caperton*, this Court should conclude that NCUA cannot proceed administratively against Mr. Moats. NCUA's in-house action against Mr. Moats is a chimera of executive, legislative, and judicial power all rolled into one neat affront to the Constitution. These separation-of-powers and procedural deficits deprive Mr. Moats of his Fifth Amendment right to the due process of law and violate Article III. The Court should so declare and enjoin NCUA from administratively proceeding against Mr. Moats.

## IV.   Giving NCUA the Power to Bring In-House Adjudicative Actions Against Private Parties like Mr. Moats Violates the Nondelegation Doctrine

*Jarkesy* concluded that Congress unconstitutionally gave "significant" "unfettered authority" to SEC to "bring enforcement actions in Article III courts or within the agency" without providing SEC "with an intelligible principle to guide its use of the delegated power." 34 F.4th at 459.

*Jarkesy* noted the Supreme Court's rule that "the power to assign disputes to agency adjudication is 'peculiarly within the authority of the legislative department.'" 34 F.4th at 461 (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). *Atlas Roofing* also confirms that in some circumstances not at issue here, "*Congress* has the power to assign to agency adjudication matters traditionally at home in Article III courts."

19

*Jarkesy*, 34 F.4th at 461 (citing *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 455 (1977)). As does *Crowell*: "the mode of determining" which cases are assigned to administrative tribunals "is completely within congressional control." 285 U.S. at 50.

*Jarkesy* found unconstitutional the statute via which "Congress gave *the SEC* the power to bring securities fraud actions for monetary penalties within the agency instead of in Article III court whenever the SEC in its unfettered discretion decides to do so." *Jarkesy*, 34 F.4th at 461. The SEC thus had the unconstitutional "ability to determine which subjects of its enforcement actions are entitled to Article III proceedings with a jury trial, and which are not." *Id.* Put differently, "the power to decide which defendants should receive *certain legal processes* (those accompanying Article III proceedings) and which should not … is a power that Congress uniquely possesses." *Id.* at 462. And the Supreme Court has made clear that Congress cannot "delegate to the Courts, or to any other tribunals, powers which are *strictly and exclusively* legislative." *Wayman v. Southard*, 23 U.S. 1, 42 (1825) (emphasis added). So, if this "power to decide" whether to proceed against Mr. Moats in Article III courts or agency tribunals is legislative power that is "uniquely," *Jarkesy*, "completely," *Crowell*, "peculiarly," *Oceanic*, or "strictly and exclusively," *Wayman*, vested in Congress, then Congress cannot under the Vesting Clause "delegate" that power to NCUA. U.S. Const. art. I, § 1.

But even if one assumes that Congress could assign this "power to decide" where to bring an enforcement action to an agency like NCUA, Congress still must provide "an intelligible principle by which" NCUA can

"exercise that power." *Jarkesy*, 34 F.4th at 462. In striking down the SEC statute, *Jarkesy*, like *Panama Refining* before it, "scoured the statute for directives to guide" the agency's "use of that authority" but "found none." *Id.* at 462 (discussing *Panama Refining Co. v. Ryan*, 293 U.S. 388, 405–06 (1935)). Despite that scouring, in the SEC statutory scheme, as well as in the one at issue in *Panama Refining*, the Fifth Circuit and the Supreme Court could find "no … policy, … no standard, … no rule." *Id.* (quoting *Panama Refining*, at 430).

The same here. NCUA issued the Notice of Charges against Mr. Moats under 12 U.S.C. § 1786(e), (g), (k). Doc. 26 at 20. But neither in 12 U.S.C. § 1786, nor anywhere else in the Federal Credit Union Act has Congress "declared" any "policy," "established" any "standard," or "laid down" any "rule," *Panama Refining*, 293 U.S. at 430, to guide the "exclusive authority and absolute discretion" it gave NCUA to bring "enforcement actions within the agency instead of in an Article III court." *Jarkesy*, 34 F.4th at 462. "Congress has said nothing at all indicating how [NCUA] should make that call in any given case." *Id.* Such "total absence of guidance is impermissible under the Constitution." *Id.*

*Jarkesy*'s holding comports with both the *Gundy* plurality, which noted that "we *would* face a nondelegation question" if the statute gave no guidance as to whether the Attorney General can require certain persons "to register, or not, as [the Attorney General] sees fit, and to change her policy for any reason and at any time," *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (Kagan, J., plurality op.) (simplified; emphasis added), and the *Gundy* dissent, which

would find a nondelegation doctrine violation if Congress gave "vague" guidance to the agency's exercise of discretion, *Id.* at 2142 (Gorsuch, J., dissenting). Even if NCUA were to retort that there is some vague guidance in the operative statutes directing NCUA's decision to bring cases in-house or in Article III court, such vague guidance would still be an unconstitutional delegation under *Jarkesy*, *Gundy*, and *Panama Refining*. This Court should so hold and enjoin NCUA from proceeding administratively against Mr. Moats.

## Conclusion

The Court should grant summary judgment in favor of Mr. Moats on all counts (Counts 1–4, Doc. 26 at 10–16).

DATED:  September 8, 2023.

Respectfully submitted,

/s/ Aditya Dynar  
ADITYA DYNAR  
Ariz. Bar No. 031583*  
MOLLY E. NIXON  
N.Y. Bar No. 5023940*  
PACIFIC LEGAL FOUNDATION  
3100 Clarendon Blvd.  
Suite 1000  
Arlington, VA 22201  
Telephone: (202) 888-6881  
Facsimile: (916) 419-7747  
ADynar@pacificlegal.org  
MNixon@pacificlegal.org  
*Pro Hac Vice*

/s/ Russell Hardin, Jr.  
RUSSELL HARDIN, JR.  
*Attorney-in-Charge*  
State Bar No. 08972800  
Federal I.D. No. 19424  

OF COUNSEL:  
RUSTY HARDIN & ASSOCIATES, LLP  
TERRY D. KERNELL  
State Bar No. 11339020  
Federal I.D. No. 15074  
EMILY M. SMITH  
State Bar No. 24083876  
Federal I.D. No. 1890677  
1401 McKinney Street, Suite 2250  
Houston, TX 77010  
Telephone: (713) 652-9000  
Facsimile: (713) 652-9800  
rhardin@rustyhardin.com  
tkernell@rustyhardin.com  
esmith@rustyhardin.com  

*Counsel for Plaintiff*

## Certificate of Service

I hereby certify that on September 8, 2023, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

/s/ Aditya Dynar
ADITYA DYNAR
Ariz. Bar No. 031583*
*Pro Hac Vice*